UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MBAWE,

      Plaintiff,

                               Case No.

v                                 Judge:

                                 Magistrate:

FERRIS STATE UNIVERSITY, a
Michigan Institution of Higher Education;
RENEE VANDER MYDE, individually and
in her official capacity; STEPHEN DURST,
individually and in his official capacity; JEFFREY
BATES, individually and in his official capacity;
PAUL BLAKE, individually and in his official
Capacity,

      Defendants.

SHEREEF H. AKEEL (P54345)
Akeel & Valentine, PLC
Attorneys for Plaintiffs
888 West Big Beaver Road, Suite 910
Troy, MI   48084-4736
(248) 269-9595
shereef@akeelvalentine.com

---

**COMPLAINT AND JURY DEMAND**

---

    **NOW COMES** Plaintiff, JOHN MBAWE, by and through his undersigned counsel, AKEEL & VALENTINE, PLC, and for his complaint against Defendants FERRIS STATE UNIVERSITY, d/b/a FSU, RENEE VANDER MYDE, STEPHEN DURST, JEFFREY BATES, and PAUL BLAKE states as follows:

AKEEL & VALENTINE, PLC · TROY, MICHIGAN 48084-4736 · www.akeelvalentine.com · 888 W. BIG BEAVER ROAD · SUITE 910 · (248) 269-9595 · FAX (248) 269-9119

1

## JURISDICTIONAL ALLEGATIONS\

1. Plaintiff, John Mbawe, is a 46 year old African male.

2. Defendant, Ferris State University a/b/a FSU ("FSU" or the "University"), is a Michigan Institution of Higher Education within Article 8 of the Michigan Constitution of 1963.

3. Defendant Ferris State University is and was at all times a recipient of federal financial assistances from the government of the United States of America.

4. Defendant Ferris State University operates within its structure, the College of Pharmacy (hereafter, "College"), an accredited degree program.

5. Defendant Renee Vander Myde was at all relevant times the Director of Ferris State University's Health Center who possessed authority to act on behalf of the Defendant Ferris State.

6. Defendant Stephen Durst was at all relevant times the Dean of the College of Pharmacy who possessed the authority to act on behalf of the Defendant Ferris State.

7. Defendant Jeffrey Bates was at all relevant times the Student Service Coordinator who possessed the authority to act on behalf of the Defendant Ferris State.

8. Defendant Paul Blake was at all relevant times the Associate Provost for Academic Affairs who possessed the authority to act on behalf of the Defendant Ferris State.

9. This Honorable Court has Jurisdiction over this action pursuant to 28 U.S.C. § 1331 for the reason that the Plaintiff asserts claims arising under the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988.

10.    This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(3) for the reason that Plaintiff seeks to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

11.    This Honorable Court has jurisdiction over this matter for the reason that this Plaintiff asserts claims under the Rehabilitation Act of 1973, being 29 U.S.C. § 794, with remedies and potential attorney fees authorized under 29 U.S.C. § 794(a).

12.    This Honorable Court has jurisdiction over this matter for the reason that this Plaintiff asserts claims under Title II of the Americans with Disabilities Act of 1990, as amended ("Title II" and "ADA"), 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

13.    This Honorable Court also has supplemental jurisdiction over Plaintiff's claims under Michigan law pursuant to 28 U.S.C. § 1367(a) because they are inextricably intertwined with the federal claims and arise out of the same nucleus of operative facts.

14.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) for the reason that the Defendants' geographical boundaries and/or residences are located in this judicial district, as are its principal offices.

## FACTUAL ALLEGATIONS

15.    Plaintiff repeats and re-alleges the foregoing paragraphs, as though fully set forth herein.

16.    The Department of Education Office of Civil Rights has issued a report dated July 29, 2016, pertaining to the facts alleged in this Complaint (*See,* **Ex A,** OCR Report).

17.    During the government investigation, incriminating admissions and statements were obtained that demonstrate blatant violations of, among other

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736 • (248) 269-9595 • (248) 269-9119 • FAX (248) 269-9119
www.akeelvalentine.com
888 W. BIG BEAVER ROAD • SUITE 910

claims, Title II of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

18.   Plaintiff is a 46 year-old African male who was born and raised in Africa and came to the United States by himself to pursue his education at Ferris State University's College of Pharmacy.

19.   Plaintiff enrolled in the College in 2010, with the goal to graduate in 2014.

20.   In order to graduate from the College, Plaintiff would need to complete 4 years – 2 of them on the main campus in Big Rapids, 1 on the campus in Grand Rapids, and the final year spent doing an internship and gaining experience.

21.   In order to graduate Plaintiff needed to obtain 1,740 hours of experiential time.

22.   In order to gain experiential time Plaintiff needed to maintain an intern pharmacist license, which would allow him to credit his hours towards pharmacy licensure.

23.   Plaintiff obtained his intern pharmacist license on July, 14, 2010. (See, **Ex B,** Department of Licensing form).

24.   While enrolled, Plaintiff was experiencing an idiopathic medical condition that would cause severe pain in his abdomen.

25.   Due to the severity of the pain he was experiencing, Plaintiff would at times visit the University's Birkman Health Center ("BHC") in order to seek medical treatment.

26.   BHC is the campus clinic at FSU that provides both physical health and mental services to students.

ANSEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736   (248) 269-9595   FAX (248) 269-9119
www.anselvalentine.com
888 W. BIG BEAVER ROAD   SUITE 910

27.    During Plaintiff's time at the College, Plaintiff confided in a physician of BHC about some concerns he was having.

28.    On April 23, 2012, Plaintiff received a letter from the Dean of the College ("Defendant Durst") congratulating Plaintiff for "*reaching the mid-point of the Doctor of Pharmacy curriculum. The White Coat Ceremony is confirmation of your efforts and successes and serves as affirmation of the excellent foundation you have created for further studies and experiences in the profession of Pharmacy.*" (*See,* **Ex C,** April 23rd letter).

29.    In July 2013, Plaintiff told his BHC physician that he believed he had been targeted or bullied by a group of people who put some type of liquid on his car and his left arm, which caused skin darkening.

30.    In August 2013, Plaintiff shared similar beliefs with his BHC physician, but also stated that someone broke into his apartment and poisoned his food.  He also complained of bullying that he was experiencing from some of the other students

31.    Plaintiff's third year at the College began on August 26, 2013.

32.    On September 6, 2013, Defendant Bates sent an email to Plaintiff's professors stating, "*[w]e believe that [the Student] has some serious health issues going on, which I have personally discussed with his physician.*"

33.    According to Defendant Bates, "*serious health issues*" was in reference to a conversation he had with Plaintiff's physician regarding "mental health concerns."

34.    Upon information and belief, this was the first time Defendant Bates had engaged in a conversation with a health care provider about a student.

35.    Plaintiff did not waive his doctor-patient confidentiality, and did not sign a release for the physician or Defendant Bates to have such a conversation.

36.     On September 16, 2013, one of Plaintiff's professors emailed Defendant Bates about the death of Plaintiff's brother.

37.     Plaintiff requested a week off from classes, so he could go to Africa and attend his brother's funeral; however, circumstances would not allow him to do so and he was not able to attend his brother's burial.

38.     Also on September 16, 2013, a student allegedly found three scraps of paper left in a restroom at the Grand Rapids campus.

39.     Upon information and belief, on the scraps of paper there were alleged notes regarding Plaintiff's flight plans, the belief that Plaintiff was being injected, the belief that cameras were put in Plaintiff's apartment, and the belief that Plaintiff's food was being poisoned.

40.     On September 18, 2013, Defendant Bates emailed Plaintiff's professors regarding Plaintiff and some serious health considerations.

41.     On September 19, 2013 Plaintiff met with his BHC physician.

42.     Plaintiff told his physician that he had just lost his brother and was not feeling well.

43.     BHC's clinic notes say Plaintiff "*appear[ed] very rational, but claim[ed] that people [were] coming into his apartment and poisoning his food and injecting things into his body.*"

44.     The clinic notes also say, "*Patient is not in any way threatening or bizarre with his behavior.*"

45.     The clinic notes further indicate that Plaintiff's physician had spoken to Defendant Bates about Plaintiff, and that Plaintiff was rational, unwilling to see a psychiatrist, and "*not a threat to others or himself.*"

46.     Furthermore, the physician told Plaintiff that the College had repeatedly called the physician to convince Plaintiff to see a psychologist.

AKEEL & VALENTINE, PLC   •   TROY, MICHIGAN 48084-4736   •   www.akeelvalentine.com   •   (248) 269-9595   •   (248) 269-9119   •   FAX (248) 269-9119
888 W. BIG BEAVER ROAD   •   SUITE 910

47.     That same day Plaintiff went to see a psychologist who called the school's chief security officer.

48.     Plaintiff recalls the officer saying, *"I cannot force him to go to talk to a psychologist. He is not of harm to himself or anyone."*

49.     According to BHC clinic notes, the officer told the psychologist that he believed Plaintiff *"was schizophrenic and needed to be hospitalized but he was not an eminent (sic) threat to himself or anyone else."*

50.     Plaintiff was assessed as a *"low"* risk.

51.     Notes indicate that Plaintiff seemed *"quite friendly and rational."*

52.     The counselor's notes say there was a discussion with Plaintiff about his beliefs appearing delusional and paranoid.

53.     BHC clinic notes further indicate that the counselor had spoken to another BHC counselor about whether they *"had any right to do anything else"* and they *"mutually agreed that [they] did not."*

54.     On September 23, 2013, Defendant Myde's notes indicate that she had a discussion with the University's Dean of Student Life about Plaintiff out of concern for Plaintiff's *"well-being and safety."*

55.     Upon information and belief, Defendant Myde claimed to have concerns about Plaintiff being paranoid and delusional and suffering from a mental illness.

56.     As of September 23, 2013, Defendant Myde had never interacted with Plaintiff.

57.     Upon information and belief, on that same day a meeting was called with the Behavior Review Team ("BRT").

58.     Upon information and belief, BRT is a group mainly concerned with the safety of the students.

ABEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.abeelvalentine.com
888 W. BIG BEAVER ROAD   ·   SUITE 910   ·   (248) 269-9595   ·   FAX (248) 269-9119

59.     Upon information and belief, a meeting with BRT is very rare.

60.     Upon information and belief, Defendant Myde told BRT that Plaintiff was "*very kind and did not display any aggressive behavior toward them.*"

61.     BRT meeting minutes indicate that the University's attorney asked if medical withdrawal would be appropriate. Defendant Bates said Plaintiff did not want that.

62.     According to Defendant Myde and the University's handbook, the medical withdrawal process is a student-initiated process.

63.     According to Defendant Myde and Defendant Blake, as of September 23, 2013, a student had never been involuntarily withdrawn for medical reasons.

64.     On the evening of September 23, 2013 (following the BRT meeting), Defendant Myde sent an email to the Dean of Student Life discussing steps she had taken in order to have Plaintiff involuntarily committed to a hospital.

65.     On September 24, 2013, Defendant Myde allegedly interacted with Plaintiff for the first time.

66.     According to an email she sent to the BRT, Defendant Myde had a 15-20 minute conversation with Plaintiff on the phone and she believed he was still delusional.

67.     In reality, and upon information and belief, this phone conversation only lasted 2 minutes.

68.     Later that day Defendant Myde filed a "Petition/Application for Hospitalization" with the State of Michigan Probate Court County. (*See*, **Ex D**, Petition/Application for Hospitalization)

69.     In the petition Defendant Myde stated that she believed Plaintiff had a "*mental illness and as a result of this mental illness, [Plaintiff] can be reasonably expected within the near future to intentionally or unintentionally seriously*

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.akeelvalentine.com
888 W. BIG BEAVER ROAD    •    SUITE 910    •    (248) 269-9595    •    (248) 269-4736    •    FAX (248) 269-9119

8

*physically injure self or others, and has engaged in an act or acts or made significant threats that are substantially supportive of this expectation.*"

70.    Defendant Myde also stated that she believed that failing to involuntary commit Plaintiff would result in "*significant physical harm to self or others.*"

71.    As of September 24, 2013, Defendant Myde had never met with Plaintiff in person, and had only spoken to him once on the phone for 2 minutes.

72.    Defendant Myde failed to inform the court that Plaintiff had been evaluated as non-threatening and rational, but delusional and paranoid.

73.    Upon information and belief, as of September 24, 2013, this was the only time Defendant Myde had petitioned to have a student involuntarily hospitalized.

74.    On October 1, 2013, as Plaintiff was sitting in class, Plaintiff was pulled out of class in front of his peers and arrested by two police officers where he was subjected to utter humiliation, embarrassment and shame, and taken against his will to a mental health facility for a court-ordered psychiatric evaluation, and was then involuntarily hospitalized and detained for sixteen days. (*See,* **Ex E,** Police Report)

75.    Upon information and belief, on that same day the College had also blocked Plaintiff's access to the College's Grand Rapids campus.

76.    When Defendant Durst was asked whether the College did this because Plaintiff was considered a threat, he responded by saying he "*wouldn't go that far.*"

77.    Upon information and belief, as of October 1, 2013, the College had not previously denied a student's access to the campus, even if the student had engaged in conduct that was violent and threatening.

ARKEL & VALENTINE, PLC  
TROY, MICHIGAN 48084-4736  
www.arkesvalentine.com  
888 W. BIG BEAVER ROAD   •   SUITE 910   •   (248) 269-9595   •   FAX (248) 269-9119

78.     On October 2, 2013, Defendant Myde faxed the College Dean's office notifying the College that Plaintiff had been placed on medical leave and that BHC would let the College know if the student withdrew.

79.     Defendant Myde also emailed the BHC counseling center secretary instructing her to place Plaintiff on medical leave.

80.     Upon information and belief, this was the first time such an action was initiated by the University, and not the student.

81.     On October 11, 2013, University employees met to discuss issues relating to Plaintiff.

82.     Meeting notes show discussions of various withdrawal methods, academic misconduct discussions, technical standards related to disabilities, and dismissal policies.

83.     Meeting notes also show discussions of how licensure issues could "*trump all of this.*"

84.     On October 15, 2013 at 8:35 a.m., the College's off-campus Student Services Director emailed Defendant Myde regarding two missed calls and voicemails she had from Plaintiff asking about his status in the College.

85.     The email stated that the off-campus Student Services Director had notified Defendant Durst and Defendant Blake of this but they were "*waiting to speak to an attorney before moving forward.*"

86.     Later that day Defendant Durst emailed the BRT members saying that "*[r]ecognizing the limited security of email, suffice it to say that,*" in consultation with the University's attorney, the University decided they would process a medical withdrawal for Plaintiff.

87.     Upon information and belief, this was the first time such an action was initiated by the University and not the student.

88.     On October 16, 2013, Plaintiff was released from the hospital after being involuntarily detained for 16 days.

89.     Upon information and belief, on that same day Defendant Durst emailed Plaintiff's professors and other college staff informing them that Plaintiff had been withdrawn from the College.

90.     Having been unaware of this, Plaintiff contacted his professors asking them how to make up the exams he missed.

91.     Plaintiff was thereafter told that the College Dean's office had sent an email stating that Plaintiff withdrew from the program.

92.     At all relevant times herein, the University's policies provided for notice and an opportunity to be heard prior to dismissing or withdrawing a student from classes.

93.     At all relevant times herein, the University's Code of Student Community Standards, Section II, stated that the University's policies are "*designed to provide students with the guarantees of due process and procedural fairness...*"

94.     At all relevant times herein, Subsection II.B.9 of the University's disciplinary procedures specifically provided for due process protections when dealing with "*responses to mental health crisis or emotional distress.*"

95.     Plaintiff was not given any notice of the decision until after it was made.

96.     University records show that students involved in drug dealing and violence were provided due process protections; however, Plaintiff was not provided the same.

97.     Upon information and belief, due process protections were provided for students found to have sexually assaulted other students, a student who

AKBEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736   ·   (248) 269-9595   ·   FAX (248) 269-9119
www.akbelvalentine.com

888 W. BIG BEAVER ROAD   ·   SUITE 910

physically assaulted a roommate, students who possessed and dealt drugs, a student who directed a loaded firearm at another person, and a student who stabbed another student; however, Plaintiff was not provided the same.

98.     On the evening of October 16, 2013, at 9:06 p.m., Defendant Bates called Plaintiff and asked Plaintiff to meet with him at a location off-campus. (*See,* **Ex F,** Phone Records)

99.     Defendant Bates reluctantly agreed to meet at the Dean's office after Plaintiff insisted; however, Defendant Bates informed Plaintiff that Plaintiff was not allowed to go to the College Dean's office alone and would have to be escorted there.

100.     On October 17, 2013, Plaintiff went to the College Dean's office and was told that he had been withdrawn from the program for medical reasons and it was "*for his own good.*"

101.     According to Defendant Bates, the meeting was conducted in order to inform Plaintiff of a decision that had already been made.

102.     Plaintiff was given no opportunity to be heard.

103.     Plaintiff asked Defendant Durst and Defendant Bates how to appeal the decision.

104.     Both Defendants instructed Plaintiff that if he went to the President's office, the decision would remain the same.

105.     Plaintiff was not told how an appeal would work or what he would have to show to be successful on the appeal.

106.     Plaintiff was given no written notice of his withdrawal.

107.     Defendant Blake admits that failing to provide written notice was an "*oversight*" by Defendants.

108. Upon information and belief, Defendant Durst knows of no other College student that was dismissed without the application of due process protections.

109. Following the meeting, Defendant Bates called the Dean of Student Life and asked about the appeal process.

110. The Dean of Student Life then emailed his administrative assistant and stated, "*we all need to be on the same page legally and provide an appropriate response. This is one of the reasons why we have voluntary medical withdrawals and not involuntary medical withdrawals. We followed [University counsel's] direction to do a medical withdrawal...involuntarily.*" He further stated that he believed Plaintiff should be provided due process.

111. On October 18, 2013, Plaintiff met with Dr. William Potter, the Associate Provost of Retention and Student Success, who instructed Plaintiff to file a written appeal with Defendant Blake.

112. On October 21, 2013, Plaintiff attempted to take his written appeal to Defendant Blake but he was informed that Defendant Blake would be out of the country until October 28, 2013. This caused Plaintiff a great deal of stress, anxiety and mental anguish as he had already been out of school for 21 days.

113. On October 28, 2013, Plaintiff took his written appeal to Defendant Blake.

114. Upon receiving Plaintiff's written appeal, Defendant Blake then emailed Defendant Durst and stated, "*I need to know what you need to have happen.*"

115. Defendant Durst responded saying that overturning the medical withdrawal "*may place the student in greater peril for an academic dismissal.*"

ANEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.akeelvalentine.com
888 W. BIG BEAVER ROAD · SUITE 910 · (248) 269-9595 · FAX (248) 269-9119

116. The provost's office then requested a status update from the Plaintiff's professors in an attempt to determine whether Plaintiff would be able to pass his classes if he were to continue in the program.

117. On October 25, 2013, Plaintiff received an untruthful or fraudulent letter from the Student Services Coordinator stating that the letter is "*to inform you that your request to withdraw from your Fall 2013 classes at Ferris State University has been completed.*" (*See,* **Ex. G,** October 25th Letter**).**

118. Plaintiff did not request to withdraw from the Fall 2013 classes, as represented in the October 25, 2013 letter.

119. That same day Defendant Durst emailed Defendant Blake stating that he had met with the University's counsel and the vice president for academic affairs to discuss the appeal.

120. Defendant Durst informed Defendant Blake that Defendant Durst would be reporting Plaintiff to the Health Professional Recovery Program (HPRP) and the goal was to "*ensure that we don't allow a student to continue in the program with little or no ho[p]e of completing the experiential portion of the curriculum and cannot be licensed.*"

121. Upon information and belief, this is the first time the College has reached out to the HPRP about a student like Plaintiff.

122. Defendant Durst further informed Defendant Blake that the University's counsel and the vice president for academic affairs would be assessing the appeal.

123. Defendant Durst then emailed the University's counsel saying he did not believe the HPRP would investigate Plaintiff because of how Defendant Durst initially found out about Plaintiff's condition (through his physician).

124. Having considered this, Defendant Bates faxed the three scraps of paper that were previously found in the Grand Rapids restroom to someone he knew at the HPRP.

125. Defendant Bates told the HPRP that the three scraps of paper belonged to Plaintiff.

126. On October 31, 2016 Defendant Blake emailed Plaintiff informing him that he, the provost, Defendant Durst, and vice president for diversity and inclusion had a meeting to decide his appeal, but the decision was postponed "*and with good reason*" (*See,* **Ex H,** October 31st email).

127. Defendant Blake then asked Plaintiff to meet with the vice president for diversity and inclusion.

128. Plaintiff informed Defendant Blake that he was not able to meet with the vice president for diversity and inclusion on that day because he was in Chicago.

129. On November 1, 2013, having never met with Plaintiff, the vice president for diversity and inclusion emailed Defendant Blake saying the withdrawal was justified. He also recommended a group study of how the university should deal with similar situations.

130. On November 5, 2013, Defendant Durst, Defendant Bates, and Defendant Blake met with Plaintiff to inform him that his appeal had been denied.

131. Plaintiff was told his appeal was denied for three reasons:

a. 1) "*The amount of time that John missed from his classes this semester and the results of a consultation with John's instructors done by Dr. Bates that he would, other than one class, not be able to pass the classes*";

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4738
www.akeelvalentine.com
888 W. BIG BEAVER ROAD • SUITE 910 • (248) 269-9595 • (248) 269-8119 • FAX (248) 269-8119

b. 2) *"The fact that John is already on a remedial track of the pharmacy program and that a failure of any classes this semester (if he were to return at this point and attempt to complete exams and course work) would put John in jeopardy of being dismissed academically from the program, and"*;

c. 3) *"The professional licensure (for internships) issue has taken precedent as John, by professional obligation, has been reported to the HPRP Board and will need to reconcile the licensure issue prior to returning to his internship"* (*See,* **Ex I1,** November 5, 2013 Meeting Minutes).

132. Defendant Durst also told Plaintiff that *"the medical withdrawal and appeal for this has been denied due to his medical issues."* (**Ex I2**)

133. Meeting notes indicate that Defendants explained to Plaintiff that this was being done in order to "help" him.

134. Following the November 5th meeting, Plaintiff sent an email to Defendant Blake again asking for a letter from the College saying he had been withdrawn by the College.

135. On November 12, 2013, Defendant Myde wrote in an email that she was glad the University's counsel was involved *"because of ADA and potential anti-discrimintion issues with regard to mental illness."*

136. On November 13, 2013, Plaintiff sent another email to Defendant Blake asking for a letter saying the College withdrew him from the program. (*See,* **Ex J,** November 13th email to Defendant Blake)

137. Defendant Blake then emailed Defendant Durst and Defendant Bates saying he was *"concerned about the language [the Student] is using about*

*withdrawal and being withdrawn. Does he have legal counsel to do either of you know?'"*

138. On November 15, 2013 Plaintiff emailed Defendant Durst again asking for a written letter about his situation (*See*, **Ex K,** November 15th email to Defendant Durst)

139. On November 18, 2013, Plaintiff received a letter from Defendant Blake explaining his status in the program. (*See*, **Ex L,** November 18th letter from Defendant Blake)

140. The letter stated that Plaintiff would have to obtain clearance from the HPRP and reapply for admission to the University

141. On December 18, 2013, a member of the College progressions committee emailed Defendant Durst and Defendant Bates stating that *"after our conversation yesterday"* he had looked into Plaintiff's history and Plaintiff should be dismissed due to his inability to finish the first three years of his degree within the four years allotted to him. He further said that a dismissal letter would *"allow us to set stipulations if [Plaintiff] appeals and we allow him back in."*

142. Defendant Durst responded by saying not to dismiss Plaintiff because the withdrawal was an intentional effort to *"help"* Plaintiff and dismissing him would contradict our efforts to *"help"* him (quotations included in the original email).

143. On February 3, 2014, the BHC physician spoke to a psychiatrist with the HPRP about Plaintiff and her *"impressions of his delusional thinking, that it may be partly cultural growing up in Africa, and that he seemed very normal except for his delusion that someone is trying to kill him."*

144. Plaintiff was also reported to the Michigan Board of Pharmacy.

145.   On May 2, 2014, Plaintiff's internship license was suspended (*See,* **Ex M**, License Summary).

146.   From October 21, 2013 until October 28, 2014, Plaintiff sent letters to many institutions about the way he was discriminated against.

147.   The letters were sent to various administrators of the University, the US Department of Education, the US Department of Justice, the Department of Licensing and Regulatory Affairs, etc.

148.   On July 29, 2016, after conducting a thorough investigation, the Department of Education Office of Civil Rights made a finding in which Ferris State University was found to be in violation of Section 504 of the Rehabilitation Act, and Title II of the ADA. (*See,* **Ex. A,** OCR Report)

## COUNT I
## DISCRIMINATION BASED ON DISABILITY
## IN VIOLATION OF TILE II OF ADA

149.   Plaintiff hereby realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

150.   Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

151.   Ferris State University has, by reason of the disability of a qualified individual, excluded such individual from participation in, and denied him the benefits of, Ferris State University's services, programs, and activities, and further subjected such individual to discrimination in violation of 42 U.S.C. § 12132 and the Title II implementing regulation, 28 C.F.R. pt. 35, by:

    a.   Denying such qualified the opportunity to participate in or benefit from aids, benefits, or services, *see* 28 C.F.R. § 35.130(b)(1)(i);

    b.   Affording such qualified individual with disability an unequal opportunity to benefit from the aids, benefits, and services that are

18

provided to others, *see* 28 C.F.R. § 35.130(b)(1)(ii);

c.  Providing such qualified individual with disability with aids, benefits, and services that did not afford him an equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that provided to others, *see* 28 C.F.R. § 35.130(b)(1)(iii);

d.  Providing different aids, benefits, or services to such qualified individual with disability than are provided to others when such actions are not necessary to provide such individual with disability with aids, benefits, or services that are as effective as those provided to others, *see* 28 C.F.R. § 35.130(b)(1)(iv);

e.  Utilizing criteria or methods of administration, including insufficient and inconsistent policies, practices, and procedures, that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, *see* 28 C.F.R. § 35.130(b)(3);

f.  Failing to take appropriate steps to ensure that Ferris State University's communications with qualified applicants, participants, and members of the public with disabilities are as effective as communications with others, including through the proper application of the due process procedures of the University, *see,* 28 C.F.R. § 35.160(a)(1),(b)(1);

g.  Failing to make reasonable modifications in Ferris State University's policies, practices, or procedures to avoid discrimination on the basis of disability, *see* 28 C.F.R. § 35.130(b)(7); and

h.  Excluding individuals with disabilities from participation in and denying them the benefits of Ferris State University's services,

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736 • (248) 269-9595 • FAX (248) 269-9119
www.akeelvalentine.com
888 W. BIG BEAVER ROAD • SUITE 910

programs, and activities, and otherwise subjecting them to discrimination, because Ferris State University's facilities were made inaccessible and unusable by Plaintiff because of his disability, *see* 28 C.F.R. §§ 35.149-35.151.

i. Engaging in discriminatory behavior by assessing risk based on mere speculation, stereotypes, and generalizations about individuals with disabilities in violation of 28 C.F.R. § 35.130(h).

j. Failing to adopt grievance procedures that incorporate appropriate due process standards and provide for the prompt and equitable resolution of complaints in violation of 28 35.107(b).

152. Defendant Ferris State University violated Title II of the ADA by discriminating against Plaintiff in a number of ways, including without limitation, the following:

a. Subjecting Plaintiff to a process that did not exist under University policies and procedures.

b. Allowing other students to continue their education regardless of their medical condition or situation, but not allowing the same for Plaintiff.

c. Choosing not to follow the University's written policy and due process procedure for situations dealing with students having a mental health crisis.

d. Providing due process procedures to other students who were being involuntarily ejected, such as written notice, the right to be heard, and the right to appeal to a fair and impartial administration; but not providing such protections to Plaintiff.

e. Locking Plaintiff out of the building and denying him access to campus, but not doing the same to other students who were found to

ANSEL & VALENTINE, PLLC
TROY, MICHIGAN 48084-4736  •  (248) 269-9595  •  FAX (248) 269-9119
www.anselvalentine.com
888 W. BIG BEAVER ROAD  •  SUITE 910

have engaged in behavior that demonstrates an actual threat to the safety of others.

f. Not allowing Plaintiff to meet in the Dean's office without an escort.

g. Reporting Plaintiff to HPRP and the Michigan Board of Pharmacy in order to revoke and/or suspend his internship license, but not doing the same to other students of the College who had failed to meet the licensing requirements to which the College administrators aware.

h. Providing due process to students who had represented an actual threat, including sexual assault and stabbing incidents, but not doing the same for Plaintiff.

153. Ferris State University acted intentionally and with deliberate indifference and knew or should have known of the deprivation of due process rights made available to other students in accordance with the University's policies and procedures, but was not available to Plaintiff because of his disability.

154. As a result of Ferris State University's discrimination, Plaintiff suffered devastating compensatory damages and injuries, including but not limited to, severe humiliation, embarrassment, shame, sleepless nights, frustration, physical, mental and emotional distress, aggravated symptoms of mental illness, mental distress, depression, loss of income, loss of licensure status, loss of career, loss of tuition payments, homelessness, and other economic and noneconomic loss.

AKEEL & VALENTINE, PLLC
TROY, MICHIGAN 48084-4735
www.akeelvalentine.com
888 W. BIG BEAVER ROAD • SUITE 910 • (248) 269-9595 • (248) 269-9119 • FAX (248) 269-9119

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the devastating, economic and noneconomic damages sustained, plus costs and attorneys' fees wrongfully incurred to bring this action as provided under the Act, in addition to any other damages, including punitive damages, plus any equitable relief the court deems just and equitable.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

155.   Plaintiff hereby realleges and incorporates the foregoing paragraphs of this Complaint as if fully set herein.

156.   Plaintiff is an individual with a disability as defined in 28 C.F.R. § 35.104.

157.   Plaintiff is a "qualified" individual with a disability as defined in 24 C.F.R. § 104.3(1)(3).

158.   At all relevant times, Plaintiff enjoyed the rights, privileges and protections of § 504 of the Rehabilitation Act of 1974.

159.   At all relevant times, Defendant FSU received federal funds.

160.   Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination by the University on the basis of his disability and in violation of Section 504, 34 C.F.R. § 104.4(a).

161.   The University engaged in prohibited actions by affording Plaintiff an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded to others; by providing different aid, benefits, or services to Plaintiff that are not as effective as those provided to others; and by using criteria and/or methods of administration that have the effect of subjecting qualified persons with disabilities to discrimination on the basis of disability.

ARER & VALENTINE, PLC
888 W. BIG BEAVER ROAD   •   SUITE 910   •   TROY, MICHIGAN 48084-4736   •   (248) 269-9595   •   FAX (248) 269-9119
www.arervalentine.com

*See,* 34 C.F.R. § 104.4(b).

162. Plaintiff, on the basis of his disability, was excluded from participation in, denied the benefits of, and subjected to discrimination under a recipient's postsecondary education program in violation of 34 C.F.R. § 104.43(a).

163. The University failed to adopt grievance procedures that incorporated appropriate due process standards and provided for the prompt and equitable resolution of complaints in violation of 28 C.F.R. 104.7(b).

164. The decision to terminate Plaintiff's academic enrollment was undertaken contrary to prior protocol, published criteria, and in the context of clear hostility to Plaintiff's disability.

165. Furthermore, the decision to involuntarily hospitalize, and withdraw Plaintiff from the program was based on pure speculations and stereotypes of those with mental disabilities.

166. Defendant Ferris State University violated the Rehabilitation Act by discriminating against Plaintiff in a number of ways, including without limitation, the following:

   a. Subjecting Plaintiff to a process that did not exist under University policies and procedures.

   b. Allowing other students to continue their education regardless of their medical condition or situation, but not allowing the same for Plaintiff.

   c. Choosing not to follow the University's written policy and due process procedure for situations dealing with students having a mental health crisis.

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.akeelvalentine.com
888 W. BIG BEAVER ROAD · SUITE 910 · (248) 269-9595 · (248) 269-4736 · FAX (248) 269-9119

d. Providing due process procedures to other students who were being involuntarily ejected, such as written notice, the right to be heard, and the right to appeal to a fair and impartial administration; but not providing such protections to Plaintiff.

e. Locking Plaintiff out of the building and denying him access to campus, but not doing the same to other students who were found to have engaged in behavior that demonstrates an actual threat to the safety of others.

f. Not allowing Plaintiff to meet in the Dean's office without an escort.

g. Reporting Plaintiff to HPRP and the Michigan Board of Pharmacy in order to revoke and/or suspend his internship license, but not doing the same to other students of the College who had failed to meet the licensing requirements to which the College administrators were aware.

h. Providing due process to students who had represented an actual threat, including sexual assault and stabbing incidents, but not doing the same for Plaintiff.

167. As a result of Ferris State University's discrimination, Plaintiff suffered devastating compensatory damages and injuries, including but not limited to, severe humiliation, embarrassment, shame, sleepless nights, frustration, physical, mental and emotional distress, aggravated symptoms of mental illness, mental distress, depression, loss of income, loss of licensure status, loss of career, loss of tuition payments, homelessness, and other economic and noneconomic loss.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the devastating,

ABEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.akeelvalentine.com
(248) 269-9595 · FAX (248) 269-9119
SUITE 910 · 888 W. BIG BEAVER ROAD

economic and noneconomic damages sustained, plus costs and attorneys' fees wrongfully incurred to bring this action as provided under the Act, in addition to any other damages, including punitive damages, plus any equitable relief the court deems just and equitable.

**COUNT III**
**PROCEDURAL DUE PROCESS VIOLATION**

168. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

169. Each person of the United States of America enjoys certain due process protections under the Bill of Rights and made applicable to state governmental actions under the 14th Amendment to the United States Constitution.

170. Amongst the due process protections afforded to the Plaintiff in the context of higher education are:

    a. Ensuring of fundamental fairness in all actions taken by the educational institution as to the continued enrollment of a student.

    b. Adoption of and adherence to procedures which guarantee fundamental fairness and which prevent subjective and impulsive actions by educational administrators including:

        i. Notification of the proposed deprivation and behavior to be reviewed,

        ii. A meaningful opportunity to be heard, and

        iii. A fair and impartial hearing or review process.

171. Plaintiff was not notified that he was withdrawn from the University until after it was final.

172. When Plaintiff met with Defendant Durst and Defendant Bates he was not given an opportunity to be heard because the meeting was set for the purpose of informing Plaintiff about the decision that had already been made.

173. When Plaintiff was given the opportunity to appeal the decision, Defendant Blake was designated as the proper person to appeal the decision to.

174. Following the submission of a written appeal to Defendant Blake, Defendant Blake emailed Defendant Durst asking what needed to be done.

175. Defendant Durst then informed Defendant Blake that the decision cannot be overturned, and also informed him that others (including himself) would be taking part in the appeal process.

176. The fact that Defendants intentionally and willingly tainted the appeal process in an effort to keep Plaintiff out of the school violates the procedural due process guarantees to which Plaintiff is entitled to enjoy as a citizen of the United States of America.

177. At all relevant times, the employees of the University including Defendants DURST, BATES, BLAKE, and MYDE were acting within the scope of their employment with Defendant FSU.

178. As a result of the actions of Defendants, Plaintiff's procedural due process rights have been violated.

179. At all relevant times, these Defendants owed a duty to the Plaintiff to preserve and protect the Plaintiff's rights guaranteed under the Constitution and the Statutes of the United States Constitution.

180. Plaintiff's rights as outlined herein are protected by 42 U.S.C. § 1983.

181. As a result of Ferris State University's discrimination, Plaintiff suffered devastating compensatory damages and injuries, including but not limited to, severe humiliation, embarrassment, shame, sleepless nights, frustration,

physical, mental and emotional distress, aggravated symptoms of mental illness, mental distress, depression, loss of income, loss of licensure status, loss of career, loss of tuition payments, homelessness, and other economic and noneconomic loss.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the devastating, economic and noneconomic damages sustained, plus costs and attorneys' fees wrongfully incurred to bring this action as provided under the Act, in addition to any other damages, including punitive damages, plus any equitable relief the court deems just and equitable.

## COUNT IV
## SUBSTANTIVE DUE PROCESS VIOLATION

182.   Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

183.   Each person of the United States of America enjoys certain due process protections under the Bill of Rights and made applicable to state governmental actions under the 14th Amendment to the United States Constitution.

184.   Amongst the due process protections afforded to the Plaintiff in the context of higher education are:

   a. The right to be free from an unreasonable interference with a citizen's right to life, liberty, or property by governmental officials.

   b. The right to be free from measures taken that are arbitrary and capricious, and which do not adhere to standards of fundamental fairness.

   c. The right to be free from an unwarranted intrusion into a legally recognizable interest protected by the Constitution.

185. At all relevant times, Plaintiff was a duly enrolled student of FSU in the College of Pharmacy Program.

186. Federal law, including case law, recognizes that continued enrollment in a post-secondary education is a right protected by the United States Constitution.

187. As a student enrolled in the FSU – College of Pharmacy program, Plaintiff had a right to continue in his academic pursuit if his dismissal was motivated by bad faith or his dismissal was arbitrary or capricious, of if it was based on generalization or stereotypes about a protected class of persons.

188. The decision to dismiss Plaintiff from the University was the product of malice, bad faith, arbitrary state action, and/or discriminatory generalizations rather than a conscientious, careful and deliberate state action.

189. The decision to terminate the continued enrollment of the Plaintiff, considering all of the circumstances and facts – including the fact that he had been evaluated by several individuals and determined not to be a risk to himself or others – is plainly irrational and/or shocks the conscience of a reasonable and prudent person.

190. At all relevant times, these Defendants owed a duty to Plaintiff to preserve and protect the Plaintiff's rights guaranteed under the Constitution and Statutes of the United States Constitution.

191. Plaintiff's rights as outlined herein are protected by 42 U.S.C. § 1983.

192. As a result of Ferris State University's discrimination, Plaintiff suffered devastating compensatory damages and injuries, including but not limited to, severe humiliation, embarrassment, shame, sleepless nights, frustration, physical, mental and emotional distress, aggravated symptoms of mental illness, mental distress, depression, loss of income, loss of licensure

status, loss of career, loss of tuition payments, homelessness, and other economic and noneconomic loss.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the devastating, economic and noneconomic damages sustained, plus costs and attorneys' fees wrongfully incurred to bring this action as provided under the Act, in addition to any other damages, including punitive damages, plus any equitable relief the court deems just and equitable.

**COUNT V**
**CONSPIRACY IN VIOLATION OF 42 USC 1985**

193. Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

194. Defendant Ferris State University conspired in a single plan to deprive Plaintiff of his constitutional and statutory rights.

195. Defendants DURST, BATES, BLAKE, and MYDE, all shared the general conspirational objective of denying Plaintiff his constitutional and statutory rights.

196. Plaintiff was harmed by these conspirational actions

197. As a result of Ferris State University's discrimination, Plaintiff suffered devastating compensatory damages and injuries, including but not limited to, severe humiliation, embarrassment, shame, sleepless nights, frustration, physical, mental and emotional distress, aggravated symptoms of mental illness, mental distress, depression, loss of income, loss of licensure status, loss of career, loss of tuition payments, homelessness, and other economic and noneconomic loss.

ARIEL & VALENTINE, PLC • 888 W. BIG BEAVER ROAD • SUITE 910 • TROY, MICHIGAN 48084-4736 • (248) 269-9595 • FAX (248) 269-9119
www.arielvalentine.com

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to enter a judgment against Defendants in the amount consistent with the devastating, economic and noneconomic damages sustained, plus costs and attorneys' fees wrongfully incurred to bring this action as provided under the Act, in addition to any other damages, including punitive damages, plus any equitable relief the court deems just and equitable.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

/s/: Shereef H. Akeel
By: Shereef H. Akeel (P54345)
Attorney for Plaintiff
888 West Big Beaver Road, Suite 910
Troy, MI  48084
(248) 269-9595

Dated:  September 30, 2016

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MBAWE,

      Plaintiff,

v

FERRIS STATE UNIVERSITY, a
Michigan Institution of Higher Education;
RENEE VANDER MYDE, individually and
in her official capacity; STEPHEN DURT,
individually and in his official capacity; JEFFREY
BATES, individually and in his official capacity;
PAUL BLAKE, individually and in his official
Capacity.

      Defendants.

Case No.
Judge:
Magistrate:

SHEREEF H. AKEEL (P54345)
Akeel & Valentine, PLC
Attorneys for Plaintiffs
888 West Big Beaver Road, Suite 910
Troy, MI  48084-4736
(248) 269-9595
shereef@akeelvalentine.com

---

## JURY DEMAND

**NOW COMES** Plaintiff, JOHN MBAWE, by and through his undersigned counsel, AKEEL & VALENTINE, PLC, and hereby demands a Trial by Jury of the above-referenced causes of action.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

/s/: Shereef H. Akeel

By: Shereef H. Akeel P54345
Attorney for Plaintiff
888 West Big Beaver Road, Suite 910
Troy, MI  48084
(248) 269-9595

Dated:  September 30, 2016

AKEEL & VALENTINE, PLC
TROY, MICHIGAN 48084-4736
www.akeelvalentine.com
(248) 269-9595   •   FAX (248) 269-9119
888 W. BIG BEAVER ROAD   •   SUITE 910